In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00062-CR
______________________________


KENNETH SMITH, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 04F0052-005


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Kenneth Smith had been in trouble many times, before this charge of possession of less than
one gram of cocaine. In fact, Smith had committed twenty prior misdemeanors, felonies, or
community supervision violations. After Smith's guilty plea on this charge, and with sentence
enhancement using prior convictions that were not contested, the jury issue at trial was where in the
range of two years to twenty years his punishment should fall. The jury assessed, and the trial court
ordered, eighteen years' imprisonment.
Â Â Â Â Â Â Â Â Â Â Â Â On appeal, Smith argues only that the trial court erred in overruling his objection to the
State's improper plea for law enforcement in its closing argument during the punishment phase. We
affirm the judgment of the trial court because (1) Smith preserved error only on whether the State's
closing argument improperly asked the jury to speculate that Smith might commit crimes of violence
in the future, and (2) the State's argument on the preserved issue was not improper.
(1)Â Â Â Â Â Â Â Smith Preserved Error Only on Whether the State's Closing Argument Improperly Asked the
Jury To Speculate That Smith Might Commit Crimes of Violence in the Future
Â Â Â Â Â Â Â Â Â Â Â Â Under a single, general point of error asserting that the State's closing argument during the
punishment phase of trial deprived Smith of a fair trial, Smith argues a few different issues. He
argues the State improperly sought to put the jury in the position of a victim, to have the jury punish
Smith as the community demands or expects, and to have the jury speculate about crimes of violence
Smith might commit in the future. Putting aside the multifarious nature of Smith's argument on
appeal, we see only one issue on which he preserved any error: jury speculation concerning possible
future crimes.
Â Â Â Â Â Â Â Â Â Â Â Â During closing argument on punishment, after the State stated that Smith "smokes crack" and
"may not have burglarized your home at this point," it painted a picture of a break-in of an elderly
person's home by "someone high on crack." Then the following exchange occurred:
[STATE]: . . . At some point, we've got to take a stand, or what we risk,
what we risk is us picking up the paper one day, we'll read through it, and we see a
horrible fact scenario where someone's high - -
Â 
[DEFENSE COUNSEL]: Your Honor, I'm going to object to speculation,
trying to say that Kenneth Smith is going to commit a future crime of violence. 
That's what he's getting into. That's where he came from two minutes ago.
This was Smith's sole objection during the State's closing argument on punishment.
Â Â Â Â Â Â Â Â Â Â Â Â To the extent Smith seeks to argue other matters on appeal, his objection to the trial court
does not comport with those other matters. By presenting his objection to the trial court in this
manner, Smith has preserved nothing for review on whether the State improperly attempted to put
the jury in the role of victim or improperly argued outside of the record regarding any alleged past
actions by Smith. See Tex. R. App. P. 33.1; Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002); Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998); Thomas v. State, 723 S.W.2d 696,
700 (Tex. Crim. App. 1986). He preserved error only on whether the State improperly asked the jury
to speculate about future crimes Smith might commit.
Â 
(2)Â Â Â Â Â Â Â The State's Argument on the Preserved Point Was Not Improper
Â Â Â Â Â Â Â Â Â Â Â Â The law requires a fair trial, free from improper argument by the State. Borjan v. State, 787
S.W.2d 53, 56 (Tex. Crim. App. 1990); Dickinson v. State, 685 S.W.2d 320, 322 (Tex. Crim. App.
1984); Richardson v. State, 158 Tex. Crim. 536, 257 S.W.2d 308 (1953). Improperly allowed
argument is reversible error when in light of the record as a whole the argument is extreme or
manifestly improper, violates a mandatory statute, or adds harmful facts from outside the record. 
Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996); Borjan, 787 S.W.2d at 56â57; Vineyard
v. State, 131 Tex. Crim. 476, 100 S.W.2d 362 (1937). Argument is permissible if it draws from the
facts in evidence inferences which are reasonable, fair and legitimate, but impermissible if it places
before the jury, either directly or indirectly, evidence which is outside the record. Borjan, 787
S.W.2d at 57; Jordan v. State, 646 S.W.2d 946, 948 (Tex. Crim. App. 1983).
Â Â Â Â Â Â Â Â Â Â Â Â The State may permissibly argue that a defendant may commit the same offense again in the
future. See Starvaggi v. State, 593 S.W.2d 323 (Tex. Crim. App. 1979). Such an argument does not
ask the jury to punish for unproven crimes, but is a valid plea for law enforcement. See id.; Watson
v. State, 760 S.W.2d 756, 760 (Tex. App.âAmarillo 1988, pet. ref'd). Here, the State's argument
did not suggest Smith had committed crimes other than those proven in this case. The argument
merely requested the jury to impose a severe sentence to prevent Smith from perpetrating future
crimes, which were not inconsistent with this crime or previous crimes Smith had committed, as set
out in the punishment trial record. The argument was a proper plea for law enforcement.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â January 12, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â January 13, 2006

Do Not Publish



M>Id. at 689; Ex parte White, 160 S.W.3d
46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim App. 2000). 
Therefore, we will not second-guess the strategy of counsel at trial through hindsight. Blott v. State,
588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex.
App.--Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an
objection or take certain actions, we will assume it was due to any strategic motivation that can be
imagined, and the appellant will have to rebut the presumption that trial counsel's actions were in
some way reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); Garcia v. State,
57 S.W.3d 436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d 475, 485-86 (Tex.
App.--Texarkana 2005, pet. ref'd). 

 Next, it is not enough for Appellant to show that the errors had some conceivable effect on
the outcome of the proceeding. Strickland, 466 U.S. at 693. To meet the second prong of the
Strickland test, Appellant must show that the deficient performance damaged her defense such that
there is a reasonable probability that the result of the trial would have been different. Id.; Tong, 25
S.W.3d at 712. A reasonable probability "is [one] sufficient to undermine confidence in the
outcome." Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). 

 B. Application 

 Appellant's complaints regarding ineffective assistance of counsel include failure of counsel
to: (1) object to Mr. Powell's mother's alleged extraneous offense testimony by not requesting notice
of extraneous offenses or of the State's intent to introduce any other episodes of sexual contact
between Appellant and Johnny; (2) introduce photographic evidence which had the potential to
exculpate Appellant; (3)Â request a limiting jury instruction on an extraneous act; (4) object to
bolstering testimony from an expert witness on whether the complainant was telling the truth; and
(5) request a hearing on the testimony of Lee Anna, Johnny's stepmother, regarding the outcry
statement made by the complainant. 

 In this case, although Appellant filed a motion for new trial, she did not complain of counsel's
ineffectiveness. (1) Therefore, we have no record of a hearing conducted to explain the alleged acts or
omissions of trial counsel. 

 1. Extraneous Offenses

 Appellant complains that her counsel did not request notice of extraneous offenses. The
standard discovery order issued by the court required the State to provide notice of "all other crimes,
wrongs and acts of which" it had actual knowledge. Any additional notices were not required. 
Appellant's complaint deals with the issue of whether her counsel opened the door to the extraneous
offense testimony that "[Appellant] put her hand over his private parts . . . [a]nd she said, look, he
has a pee hard on" and made movements with her hand on his penis. The following exchange
occurred during Appellant's direct examination:

 Q. Is there anything else that you have to tell the jury or the Judge as to
why you dont think it would be possible that there was any physical contact between
you and your son?

 

 A. Its just that Im not that kind of person.

 

 Q. Okay. You would never be somebody who would have physical
contact -- 

 

 A. Correct.

 

 Q. -- with a child -- with anyone below the legal age?

 

 A. That is correct. 


The law is clear that:

 Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other
crimes, wrongs, or acts committed by the defendant against the child who is the
victim of the alleged offense shall be admitted for its bearing on relevant matters,
including: 


 (1) the state of mind of the defendant and the child; and 


 (2) the previous and subsequent relationship between the defendant and the
child.


Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2008). Because the evidence would be
admissible, counsel had no duty to object, and the failure to do so does not render counsel's 
assistance ineffective. See Conrad v. State, 10 S.W.3d 43, 45 (Tex. App.--Texarkana 1999, pet.
ref'd).

 2. Limiting Instruction 

 Appellant next points us to her counsel's failure to request a limiting instruction regarding
extraneous offense evidence simultaneously with the receipt of the evidence. Such an instruction
was given in the jury charge, but not at the time the evidence was presented. We can conceive that
counsel did not want to ask for a limiting instruction because it might direct the jury's attention to
the extraneous offense. Counsel could have believed that by not objecting, he would minimize the
effect the evidence had on the jury. Further, the trial court's charge stated that evidence of other
offenses may only be used to aid . . . in determining motive, opportunity, intent, preparation, plan,
knowledge, absence of mistake, or to rebut any defensive theory. We presume the jury followed
the trial courts instruction. Colburn v. State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

 3. Exculpatory Evidence 

 Johnny testified that he did not notice any scars on Appellant during the sexual encounters. 
Appellant claimed she had a scar "from hip bone to hip bone, where [she] had [her] partial
hysterectomy." Appellant complains that her counsel should have produced exculpatory evidence
depicting her scar. There are conceivable motives as to why counsel did not want to introduce a
photograph of Appellant's hysterectomy scar. Contrary to Appellant's testimony, evidence was
introduced through her physician that her scar was smaller than Appellant had described. 
Introducing such evidence might have countered Appellant's credibility. Once again, we have no
record to explain the attorney's rationale. 

 4. Outcry Statement 

 Appellant argues that counsel was ineffective because he failed to request a hearing pursuant
to Article 38.072 of the Texas Code of Criminal Procedure to determine whether the outcry
statements made to the outcry witness were reliable. See Tex. Code Crim. Proc. Ann. art. 38.072
(Vernon 2005). The State timely gave notice of its intent to use the outcry statements and provided
defense counsel with a written report. Absent a record explaining trial counsel's strategy, we can
assume trial counsel either believed that the statements were reliable or intended to cross-examine
the outcry witness to establish that Johnny made these statements to deflect attention from his actions
toward Tommy as a part of his overall defensive strategy. 

 With respect to the above issues, it cannot be said that counsel fell below standards of
prevailing professional norms given the possible explanations for his behavior. Tong, 25 S.W.3d
at 712. 

 5. Bolstering 

 Additionally, Appellant argues that the State's questioning of an expert witness resulted in
the bolstering of Johnny's credibility:

 Q. In your experience in interviewing children, do they change up their
story during their interview?

 

 A. It kind of depends. Sometimes they do. But usually they do not. 
Usually, they're pretty consistent throughout the interview. 

 

 Q. If there's a child that you believe is not telling you the truth, do they
have a difficult time remembering what they may have told you a few minutes
before?


 A. Yes. 

 

 Q. Did you have a problem with [Johnny]? 

 

 A. No. 


Although Appellant's counsel did not object, he cross-examined the witness, who admitted that it
is common for children to lie. The witness did not directly testify that the child was truthful. An
objection to this evidence would require the attorney to specify to the court the argument that the
expert's testimony improperly commented that the child's testimony was truthful. A judgment call
could be made that the objection, even if legally correct, would negatively impact the jury. Once
again, we have no record of counsel's reasoning. Nonetheless, even if we found that counsel was
deficient in failing to object to the State's bolstering of Johnny's credibility, Appellant does not show
that it is reasonably probable that such omission occasioned a different outcome of the trial. 

 Applying the second requirement of the Strickland test, Appellant must prove that counsel's
errors affected the outcome of the proceeding. Strickland, 466 U.S. at 693. The court must examine
the alleged errors in the context of the overall record when addressing the second Strickland prong. 
Ex parte Menchaca, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993). We must evaluate performance
while taking into consideration the totality of representation and the particular circumstances of this
case. Thompson, 9 S.W.3d at 813; Ex parte Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 
Appellant claims that the "record supports a showing of harm." In this case, the testimony showed: 
(1) Johnny had performed oral sex on Appellant; (2) Appellant had performed oral sex on Johnny;
(3)Â Appellant had forced Johnny to watch adult films; (4) Appellant had fondled Johnny as an infant;
and (5) Johnny acted out sexually after these events. In light of the evidence presented at trial,
Appellant has failed to demonstrate that even if counsel's performance was deficient, the result of
the proceeding would have been different but for counsel's errors. Mitchell, 68 S.W.3d at 642. (2) 

 In this case, it is apparent that the court record is lacking counsel's reasoning behind his trial
strategy. "Failure to make the required showing of . . . deficient performance . . . defeats the
ineffectiveness claim." Strickland, 466 U.S. at 699; Thompson, 9 S.W.3d at 813. 

 Because Appellant cannot meet her burden to overcome the presumption that counsel's
conduct fell within the range of reasonable professional assistance or that the result at trial would
have been different but for counsel's alleged ineffectiveness, we overrule her second point of error. 

IV. Conclusion

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: July 13, 2009

Date Decided: July 31, 2009


Do Not Publish


1. An ineffective assistance claim may be brought for the first time on appeal. Robinson v.
State, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000). 
2. Appellant complains that counsel's ineffectiveness committed during the guilt/innocence
phase led to a longer sentence during punishment. Since Appellant does not allege counsel was
ineffective during the punishment phase, and none of the alleged claims of ineffectiveness would
affect the jury's determination during sentencing, we need not address this issue.